IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-03112-PAB

ROBERT WEBER,

    Petitioner,

v.

DEAN WILLIAMS, Executive Director of the Colorado Department of Corrections,
JERRY ROARK, Warden of Bent County Correctional Facility, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

## ORDER TO DISMISS IN PART AND FOR ANSWER

Petitioner Robert Weber is in the custody of the Colorado Department of Corrections. On October 16, 2020, he filed *pro se* an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. Docket No. 1. Petitioner challenges his convictions for sexual assault on a child, violation of a protection order, violation of bail bonds conditions, and adjudication as a habitual sex offender against children in the District Court of Arapahoe County, Colorado, case number 14CR2953. The state court imposed an indeterminate sentence of 18 years to life. Respondents have filed a Pre-Answer Response to the application. Docket No. 12. Petitioner has not filed a reply, and the time to do so has expired. Following initial review under D.C.COLO.LCivR 8.1, Magistrate Judge Gordon P. Gallagher ordered the case be drawn to a presiding judge. Docket No. 14. The action was randomly reassigned to this Court for further proceedings.

The Court must construe petitioner's filings liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110. For the reasons below, the Court dismisses the application in part and directs respondents to answer the merits of the remaining claims.

### I. STATE COURT PROCEEDINGS

#### A. Trial and direct appeal.

In addressing his direct appeal, the Colorado Court of Appeals ("CCA") recounted the background of petitioner's convictions as follows:

> Defendant, Robert Dustin Weber, appeals the judgment of conviction entered on jury verdicts finding him guilty of sexual assault on a child, violation of a protection order, and violation of bail bond conditions. We affirm.
>
> I.   Background
>
> Weber accompanied his mother and his two-year-old daughter, B.W., to a Chuck E. Cheese restaurant. This conduct contravened a protection order stemming from another case that restricted his physical proximity to anyone under the age of eighteen. While there, Weber entered the tubular play equipment with his daughter and the victim, three-year-old R.P.
>
> After Weber and his daughter left the restaurant, R.P. told her father, "He put his pee pee in my mouth." R.P.'s father pointed to the tubes and asked if it was "up there," and R.P. answered yes. R.P.'s father understood R.P. to be referring to Weber. R.P's father then contacted the police, who arrested Weber. Male DNA was found in R.P.'s mouth.
>
> While in jail, Weber described sexually assaulting R.P. at the Chuck E. Cheese to his cellmate, Sean Burrows. He also confessed to sexually assaulting his daughter, B.W.
>
> Before trial, the prosecution moved to admit (1) this confession; (2) evidence that Weber was previously convicted of sexually assaulting his

> girlfriend's niece, C.C.; and (3) evidence that he had sexually assaulted his half-sister, J.L. The court held a hearing and granted the prosecution's motion, admitting the evidence for the limited purposes of showing a common plan or scheme and to negate a claim of mistake.
>
> At trial, Burrows testified that Weber described creating a playroom beneath the stairs in his house where he would touch B.W., that he would "finger her" while bathing her, and that he would "play with his penis around her mouth and put it in her mouth."
>
> C.C. testified that Weber dated her aunt and would visit during family gatherings. She said when she was approximately five years old, Weber touched her in her bedroom, pulled her pajama bottoms down, pushed something inside her vagina with his hand, and, when he was finished, "it was really . . . sticky and wet."
>
> Finally, J.L. testified that Weber had sexually abused her during summer and holiday visits, beginning when she was about three years old. She said that Weber would come into the fort where she was playing, perform oral sex on her, and have her perform oral sex on him. He also penetrated her vagina with his penis and fingers. She said the most common sexual contact was her performing oral sex on him. In the beginning, the abuse occurred three times a week. However, when her mother started working, the abuse occurred daily. She said the abuse lasted for approximately six years, until Weber moved to Australia with his mother and stepfather.
>
> Before each witness' testimony, the judge read a limiting instruction. The jury convicted Weber of all charges.

Docket No. 12-2 at 3-4. On appeal, petitioner challenged admission of the prior act evidence, the trial court's limiting instructions, and argued that he had a constitutional right to a jury trial on the habitual-sex-offender-against-a-child count. *See id.* The CCA rejected each challenge, affirming the convictions and sentences. *Id.* at 21. The Colorado Supreme Court denied certiorari. Docket No. 12-7.

### B.     Postconviction proceedings.

After the direct appeal proceedings, petitioner filed a *pro se* postconviction motion with the trial court under Colo. R. Crim. P. 35(c). Docket No. 12-3. In it,

3

petitioner asserted that trial counsel was constitutionally ineffective on numerous grounds, that the Colorado statutes under which he was convicted were unconstitutional, and that implementation of his indeterminate sentence by the Colorado Department of Corrections ("CDOC") violated the separation-of-powers doctrine. The trial court denied the motion, and the CCA affirmed. *Id.* at 28.

## II.   FEDERAL HABEAS PROCEEDINGS

Petitioner commenced this habeas action under § 2254 on October 16, 2020. Docket No. 1. Petitioner asserts four claims, several with multiple subparts.

Claim 1 contends petitioner's trial counsel was constitutionally ineffective in fifteen ways by:

1. Failing to "challenge evidence and testimony that was re-worded and changed the allegation and accusation of the crime and who committed it." *Id.* at 5. The alleged error relates to statements the victim made during a recorded video interview. *Id.*
2. Failing to hire an expert to state "that the victim's behaviors and actions were inconsistent with [petitioner] committing the alleged offenses[.]" *Id.* at 5-7.
3. Failing to "introduce exculpatory video evidence that demonstrated [petitioner's] innocence and identifies someone other than [petitioner.]" *Id.* at 7.
4. Failing to present exculpatory DNA evidence. *Id.* at 8.
5. Failing to impeach Sean Burrows (petitioner's cellmate who testified for the prosecution) with information from a note counsel lost. *Id.* at 8-9.
6. Failing to impeach Burrows' testimony by pointing out inconsistencies

between "what [petitioner] allegedly told him about [and] what the video and pictures actually showed; the two did not match."  *Id.* at 9-10.

7. Failing to seek "a continuance to obtain a subpoena to support [petitioner's] claims and establish that Burrows was perjur[]ing himself."  *Id.* at 10.

8. Failing to impeach witnesses Petrello, Detective Kisselman, a DNA expert (or possibly DNA evidence), witness Tefft, witness Lefevre, and failing to impeach testimony regarding a play space under a stairwell.  *Id.* at 10-13.

9. Waiving (or not enforcing) petitioner's constitutional right for the habitual offender charge to be considered by and proven to a jury.  *Id.* at 13-14.

10. Failing "to research or investigate the constitutionality or valid[ity] of previous convictions for collateral attack or suppression."  *Id.* at 14.

11. Failing to demand "a jury trial on the habitual proceedings."  *Id.* at 14-15.

12. Failing to challenge the constitutionality of the Colorado statutes for which he was tried, convicted, and sentenced under.  *Id.* at 15-17.

13. Failing to object to petitioner not being afforded the opportunity to confront the victim, who was an accuser and witness against him.  *Id.* at 17-18.

14. Failing to argue, object to, or respond to the introduction of the prior act evidence introduced under Colo. R. Evid. 404(b).  *Id.* at 18.

15. Failing to object "to the wording of jury instructions using the term 'crime' versus 'element.'"  *Id.*

Claim 2 asserts that petitioner was "improperly sentenced as a Habitual Sex Offender pursuant C.R.S. § 18-3-412."  *Id.* at 19-20.  Specifically, because only counsel stipulated to petitioner's prior convictions, and petitioner did not personally

waive his constitutional right to have the prior convictions submitted to a jury, the habitual offender conviction violates his Sixth and Fourteenth Amendment rights under the United States Constitution. *Id.* at 20.

Claim 3 argues that three of Colorado's sex offender statutes are unconstitutional. Claim 3(a) contends Colorado's indeterminate sentencing statute, Colo. Rev. Stat. § 18-1.3-1004, is arbitrary in that it imposes a life sentence on those not convicted of a class one felony. Further, it violates due process and equal protection, and constitutes cruel and unusual punishment because sex offenders must receive treatment before they are eligible for parole; the CDOC is responsible for providing the treatment; the CDOC has failed to provide the required treatment; thus, offenders cannot become eligible for parole. *Id.* at 20-21.

Claim 3(b) attacks the constitutionality of Colorado's "verdict of jury" statute, Colo. Rev. Stat. § 18-1.3-803, on the ground that it allows a judge, not a jury, to "make a determination that increases or enhances the penalties related to criminal convictions." *Id.* at 21-22.

Claim 3(c) argues that Colorado's habitual sexual offender against children statute, Colo. Rev. § 18-3-412, constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Id.* at 22.

Claim 4 asserts that the administration of Colorado's indeterminate sentencing statute violates the separation-of-powers doctrine because it allows the executive branch (via the CDOC) to be "both the provider and the sentencers." *Id.* at 22-23.

As relief, petitioner asks the Court to "[v]acate [his] conviction and/or dismiss with prejudice and/or any other proper remedy under law." *Id.* at 25.

Respondents filed a Pre-Answer Response conceding the application is timely and that Claims 1 and 3(b) have been exhausted. *See* ECF No. 12. But respondents argue the remaining claims are either not cognizable or procedurally defaulted. *Id.* Petitioner has not responded to respondents' arguments. The Court will now address these issues as they relate to each claim.

## III. DISCUSSION[1]

### A. Whether Claim 4 is cognizable.

In Claim 4, petitioner contends Colorado's indeterminate-sentencing scheme violates the separation-of-powers doctrine because it allows an executive agency (the CDOC) to carry out judicial functions (imposition of criminal sentences). Docket No. 1 at 22-23. Respondents insist the claim must be dismissed because petitioner fails to allege a violation of federal law. Docket No. 12 at 7-10. The Court agrees with respondents.

As an initial matter, petitioner's claim does not assert an individual right. The Tenth Circuit recently stated: "We are unaware of any authority, and [petitioner] has cited none, that the doctrine of separation of powers is a source of individual rights[.]" *Robinson v. Polis*, No. 19-1379, 2020 WL 1898744, at *2 (10th Cir. Apr. 17, 2020). Petitioner fails to provide any authority establishing an individual right to invoke the separation-of-powers doctrine here.

Even if the doctrine conferred an individual right on petitioner, the infringement of that right does not violate the United States Constitution. The authority cited by

---

[1] "Respondents do not assert the defense of untimeliness." Docket No. 10 at 10. Therefore, the Court will not address timeliness.

respondents confirms this: "There is no provision in the Federal Constitution which directly or impliedly prohibits a state, under its own laws, from conferring upon nonjudicial bodies certain functions that may be called judicial." *Consol. Rendering Co. v. State of Vt.*, 207 U.S. 541, 552 (1908); *Sweezy v. State of N.H. by Wyman*, 354 U.S. 234, 255 (1957) ("[T]his Court has held that the concept of separation of powers embodied in the United States Constitution is not mandatory in state governments.").

*Dreyer v. People of State of Illinois*, 187 U.S. 71 (1902), illustrates the point. There, an Illinois statute created an indeterminate sentencing scheme where state courts were charged with imposing the sentence for certain crimes. *Id.* at 79. The statute vested the warden of each penitentiary, and a parole board, with the power to address "the question of the fitness of the prisoner to receive the benefits of parole." *Id.* at 80. A prisoner challenged the statute, arguing "that it confers judicial powers upon a collection of persons who do not belong to the judicial department, and, in effect, invests them with the pardoning power, committed by the Constitution to the governor of the state." *Id.* at 83. The Supreme Court rejected the challenge, finding it "present[ed] no question under the Constitution of the United States." *Id.* at 83-84. Instead, the administration of such a statute as it relates to parole eligibility was "for the determination of the state." *Id.* at 84.

The same is true here. Colorado's indeterminate sentencing statute, even if it entrusts certain decisions regarding parole with the CDOC, involves only matters of state law. This claim does not support the argument that petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§ 2241(c)(3). As such, the claim runs counter to the well-established rule that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Therefore, Claim 4 is not cognizable and will be dismissed.

### B.  Whether Claims 1, 2, and 3 have been exhausted.

Under 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may not be granted unless it appears that the petitioner has exhausted state remedies or that no adequate state remedies are available or effective to protect the petitioner's rights. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994). The exhaustion requirement is satisfied once the federal claim has been fairly presented to the state courts. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989). Fair presentation in Colorado requires that the federal issue be presented properly to the Colorado Court of Appeals, but review by the Colorado Supreme Court is not necessary. *Ellis v. Raemisch*, 872 F.3d 1064, 1082 (10th Cir. 2017) (holding that Colo. App. R. 51.1(a) only requires a habeas petitioner to fairly present a claim to the CCA to have exhausted all available state remedies).

The "substance of a federal habeas corpus claim" must have been presented to the state courts to satisfy the fair presentation requirement. *Picard v. Connor*, 404 U.S. 270, 278 (1971); *see also Nichols v. Sullivan*, 867 F.2d 1250, 1252 (10th Cir. 1989). Fair presentation does not require a habeas corpus petitioner to cite "book and verse on the federal constitution." *Picard*, 404 U.S. at 278 (internal quotation marks omitted).

However, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citation omitted). A claim must be presented as a federal constitutional claim in order to be exhausted. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam).

A petitioner's blanket statement that state remedies have been exhausted does not satisfy the burden of demonstrating a claim was fairly presented to the state courts. *See Olson v. McKune*, 9 F.3d 95 (10th Cir. 1993); *see also Fuller v. Baird*, 306 F. App'x 430, 431 n.3 (10th Cir. 2009) (unpublished) (finding a bald assertion unsupported by court records insufficient to demonstrate exhaustion of state remedies). "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan*, 513 U.S. at 365-66. "The exhaustion requirement is not one to be overlooked lightly." *Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995). A state prisoner bringing a federal habeas corpus action bears the burden of showing he has exhausted all available state remedies for each particular claim. *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992).

Additionally, under the procedural default doctrine, a claim which a petitioner presented in state court cannot be reviewed on the merits in a federal habeas action if it was precluded from review in the state court under an "independent and adequate state ground." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Similarly, a habeas claim which was not previously presented in state court, but would be precluded from state court review based on an independent and adequate state ground now if the petitioner

returned to state court to present it, is subject to an "anticipatory procedural bar" and is precluded from federal habeas review.  *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Coleman*, 501 U.S. at 735 n.1 (noting that, even if an unexhausted claim has not actually been raised and rejected by the state courts on a procedural ground, the claim is still subject to an anticipatory procedural default if it is clear that the claim would be rejected because of an independent and adequate state procedural rule).   Exhaustion of petitioner's remaining claims will be addressed in turn.

**Claim 1: Ineffective assistance of trial counsel.**   Petitioner's first claim asserts numerous missteps by trial counsel alleged to have violated petitioner's right to effective assistance of counsel.   Respondents do not assert a failure to exhaust with respect to claim 1.   Docket No. 12 at 12.   The Court's review of petitioner's appellate brief shows Claim 1 and the fifteen points of error attributed to trial counsel were presented to the CCA as a violation of his rights under the United States Constitution. *See* ECF No. 12-8.   Thus, the Court concludes that Claim 1 is timely, exhausted, and may proceed on the merits.

**Claim 2: Ineffective assistance of trial counsel.**   Petitioner's second claim asserts that his adjudication as a habitual sexual offender against children violates the Constitution because he did not personally waive his right to a jury trial on the charge. Respondents find the claim procedurally defaulted since the state postconviction court refused to consider the claim because petitioner could have raised the issue on direct appeal, but did not.   Docket No. 12 at 12-13.   The Court agrees with respondents.

Claim 2 is procedurally defaulted.   With limited exceptions not applicable here, the Colorado Rules of Criminal Procedure bar petitioner from raising a claim in state

court that was, or could have been, presented in a prior appeal or postconviction proceeding. *See* Colo. R. Crim. P. 35(c)(3)(VI) ("The court shall deny any claim that was raised and resolved in a prior appeal or postconviction proceeding on behalf of the same defendant"); Colo. R. Crim. P. 35(c)(3)(VII) ("The court shall deny any claim that could have been presented in an appeal previously brought or postconviction proceeding previously brought"). These state procedural rules are independent of federal law and are applied regularly by Colorado courts. *See Mestas v. Zavaras*, 407 F. App'x 354, 355-56 (10th Cir. 2011) (unpublished) (finding state procedural bar under Colo. R. Crim. P. 35(c)(3)(VI) independent and adequate); *Burton v. Zavaras*, 340 F. App'x 453, 454-55 (10th Cir. 2009) (unpublished) (finding a procedural default based on CCA's application of Colo. Crim. P. Rule 35(c)(3)(VII)); *Welch v. Milyard*, 436 F. App'x 861, 865 (10th Cir. 2011) (unpublished) (same); *Ellis*, 872 F.3d at 1093 n.7 (proceeding on the assumption "that the provisions of Rule 35(c)(3)(VII) at issue here satisfy the independence and adequacy criteria."). Petitioner could have raised this claim as part of his direct appeal. Because he failed to raise the claim on direct appeal, the state court did not review the claim based on its independent and adequate procedural rules. As a result, it is procedurally defaulted.

To excuse the procedural default, petitioner must establish cause and prejudice or a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. To demonstrate cause for the procedural default, petitioner must show that some objective factor external to the defense impeded his ability to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule

impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to [petitioner.]"  *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991) (internal quotation marks omitted).   If petitioner demonstrates cause, he must also show "actual prejudice as a result of the alleged violation of federal law."   *Coleman*, 501 U.S. at 750.   A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent."   *Murray*, 477 U.S. at 496.   Petitioner's *pro se* status does not exempt him from the requirement of demonstrating either cause and prejudice or a fundamental miscarriage of justice to overcome a procedural default.   *See Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994).

Petitioner offers nothing to demonstrate cause and actual prejudice to excuse the procedural default of this claim.   Nor does he raise a colorable claim of factual innocence to establish a fundamental miscarriage of justice.   Thus, the claim will be dismissed as procedurally defaulted.

**Claim 3(a): Indeterminate sentencing statute.**   Claim 3(a) asserts that Colorado's indeterminate sentencing statute, Colo. Rev. Stat. § 18-1.3-1004, is arbitrary in that it imposes a life sentence on those not convicted of a class one felony.   Further, it violates due process, equal protection, and constitutes cruel and unusual punishment because sex offenders must receive treatment before they are eligible for parole; the CDOC is responsible for providing the treatment; the CDOC has failed to provide the required treatment; thus, offenders cannot become eligible for parole.   Respondents counter that the claim is procedurally defaulted because petitioner "raised it for the first

time on postconviction review [] and the CCA refused to consider it because such a claim could have been raised on direct appeal[.]" Docket No. 12 at 13-14.

The Court finds this claim procedurally defaulted. Colo. R. Crim. P. 35(c)(3)(VII) ("The court shall deny any claim that could have been presented in an appeal previously brought or postconviction proceeding previously brought"). Petitioner could have presented this claim on direct appeal. He did not. Since the claim was precluded from review in state court under an independent and adequate state ground, it is procedurally defaulted.

Finally, petitioner does not state any facts to demonstrate cause and actual prejudice to overcome the procedural default of this claim. Nor does he raise a colorable claim of factual innocence to establish a fundamental miscarriage of justice. Claim 3(a) will therefore be dismissed with prejudice as procedurally defaulted.

**Claim 3(b): Verdict of jury statute.** Claim 3(b) argues that Colorado's "verdict of jury" statute is unconstitutional because it allows a judge, not a jury, to "make a determination that increases or enhances the penalties related to criminal convictions." Docket No. 1 at 21-22. Respondents believe the claim to be exhausted as it was raised on direct appeal and rejected by the CCA on the merits. Docket No. 12 at 14. The Court's review of the state-court record confirms as much. Docket No. 12-2 at 20-21. Therefore, Claim 3(b) will be addressed on the merits.

**Claim 3(c): Habitual sexual offender statute.** Claim 3(c) argues that Colorado's habitual sexual offender against children statute constitutes cruel and unusual punishment in violation of the Eighth Amendment. Respondents contend that, like Claims 2 and 3(a), it is defaulted since the CCA refused to consider the merits of

14

the claim because petitioner improperly raised it for the first time in the state postconviction proceedings.

The Court finds this claim procedurally defaulted. Colo. R. Crim. P. 35(c)(3)(VII) ("The court shall deny any claim that could have been presented in an appeal previously brought or postconviction proceeding previously brought"). Petitioner could have presented this claim on direct appeal. He failed to do so, and accordingly the CCA would not consider the merits of the claim. Thus, it is procedurally defaulted.

As with the defaulted claims above, petitioner does not state any facts to demonstrate cause and actual prejudice to overcome the procedural default of this claim. Nor does he raise a colorable claim of factual innocence to establish a fundamental miscarriage of justice. Claim 3(c) will therefore be dismissed with prejudice as procedurally defaulted.

## IV.   CONCLUSION

For these reasons, it is

**ORDERED** that Claim 4 is DISMISSED as not cognizable. It is

**FURTHER ORDERED** that Claims 2, 3(a), and 3(c) are DISMISSED as procedurally defaulted. It is

**FURTHER ORDERED** that, within thirty (30) days from the date of this order, respondents shall file an answer that fully addresses the merits of Claim 1 (and the multiple subparts) and Claim 3(b). It is

**FURTHER ORDERED** that respondents' answer shall conform to the requirements of Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. It is

**FURTHER ORDERED** that, within thirty (30) days from the date respondents file an answer, petitioner may file a reply.

DATED February 23, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge