IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-03112-PAB

ROBERT WEBER,

      Petitioner,

v.

DEAN WILLIAMS, *Executive Director of the Colorado Department of Corrections*,
JERRY ROARK, *Warden of Bent County Correctional Facility*, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

Petitioner Robert Weber is in the custody of the Colorado Department of Corrections.   He brings this habeas corpus action under 28 U.S.C. § 2254 to challenge state-court convictions for sexual assault on a child, violation of a protection order, violation of bail bonds conditions, and adjudication as a habitual sex offender against children.   Docket No. 1.   Petitioner's habeas application initially asserted four claims, with claims 1 and 3 having multiple subparts.   The Court dismissed four of the claims—claims 2, 3(a), 3(c), and 4—as either not cognizable or procedurally barred.   *See* Docket No. 15.   What remains is claim 1, where petitioner alleges fifteen ways that trial counsel was constitutionally ineffective, and claim 3(b), where he argues that Colorado's "verdict of jury" statute is unconstitutional because it allows a judge to make factual findings that increase criminal penalties.   For the following reasons, the Court rejects each claim on the merits and denies the habeas application.

## I.      STANDARDS OF REVIEW

"The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a prisoner who challenges (in a federal habeas court) a matter 'adjudicated on the merits in State court' to show that the relevant state-court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"   *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (citing 28 U.S.C. § 2254(d)).   Petitioner's remaining claims were adjudicated on the merits in state court.   As such, it is well-settled that "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion[,] a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."   *Id.*   "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   *Harrington v. Richter*, 562 U.S. 86, 103 (2011).   Petitioner bears the burden of proof under § 2254(d).   *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

Because Petitioner is *pro se*, the Court liberally construes his filings, but will not act as an advocate.   *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

## II.      BACKGROUND

### A.  State Court Proceedings

On direct appeal, the Colorado Court of Appeals ("CCA") recounted the

circumstances of petitioner's convictions as follows:

> Defendant, Robert Dustin Weber, appeals the judgment of conviction entered on jury verdicts finding him guilty of sexual assault on a child, violation of a protection order, and violation of bail bond conditions.   We affirm.

### I. Background

Weber accompanied his mother and his two-year-old daughter, B.W., to a Chuck E. Cheese restaurant.   This conduct contravened a protection order stemming from another case that restricted his physical proximity to anyone under the age of eighteen.   While there, Weber entered the tubular play equipment with his daughter and the victim, three-year-old R.P.

After Weber and his daughter left the restaurant, R.P. told her father, "He put his pee pee in my mouth."   R.P.'s father pointed to the tubes and asked if it was "up there," and R.P. answered yes. R.P.'s father understood R.P. to be referring to Weber.   R.P's father then contacted the police, who arrested Weber. Male DNA was found in R.P.'s mouth.

While in jail, Weber described sexually assaulting R.P. at the Chuck E. Cheese to his cellmate, Sean Burrows [S.B.] He also confessed to sexually assaulting his daughter, B.W.

Before trial, the prosecution moved to admit (1) this confession; (2) evidence that Weber was previously convicted of sexually assaulting his girlfriend's niece, C.C.; and (3) evidence that he had sexually assaulted his half-sister, J.L.   The court held a hearing and granted the prosecution's motion, admitting the evidence for the limited purposes of showing a common plan or scheme and to negate a claim of mistake.

At trial, Burrows testified that Weber described creating a playroom beneath the stairs in his house where he would touch B.W., that he would "finger her" while bathing her, and that he would "play with his penis around her mouth and put it in her mouth."

C.C. testified that Weber dated her aunt and would visit during family gatherings.   She said when she was approximately five years old, Weber touched her in her bedroom, pulled her pajama bottoms down, pushed something inside her vagina with his hand, and, when he was finished, "it was really . . . sticky and wet."

Finally, J.L. testified that Weber had sexually abused her during summer and holiday visits, beginning when she was about three years old.   She said that Weber would come into the fort where she was playing, perform

oral sex on her, and have her perform oral sex on him.   He also penetrated
her vagina with his penis and fingers.   She said the most common sexual
contact was her performing oral sex on him.   In the beginning, the abuse
occurred three times a week.   However, when her mother started working,
the abuse occurred daily.   She said the abuse lasted for approximately six
years, until Weber moved to Australia with his mother and stepfather.

Before each witness' testimony, the judge read a limiting instruction.   The
jury convicted Weber of all charges.

Docket No. 12-2 at 3-4.   The CCA rejected all of petitioner's challenges on direct

appeal, affirming the convictions and sentences.   *Id.* at 21.

After the direct appeal proceedings, petitioner filed a postconviction motion with

the trial court under Colo. R. Crim. P. 35(c).   Docket No. 12-3.   The trial court denied

the motion, and the CCA affirmed.   *Id.* at 28.   In affirming the denial of postconviction

relief, the CCA discussed the following additional background that relates to petitioner's

habeas claims:

A detective testified that Weber admitted to him that he was at Chuck E.
Cheese with his daughter that day and that he went into the "play tubes"
with his daughter and another child. When asked if he "st[u]ck [his] penis in
the little girl's mouth," Weber "looked down at his lap, and . . . said, 'I
shouldn't talk about that.'"

Weber's jail cellmate, S.B., testified that Weber confessed to him that he
had sexually assaulted a child at Chuck E. Cheese.   The prosecution also
presented CRE 404(b) evidence of Weber's other acts of sexual assault on
other victims.

The victim did not testify at trial, and neither party attempted to admit a video
of the forensic interview of the victim.

A jury found Weber guilty as charged.   Weber's trial attorney then
stipulated to a finding that Weber was a habitual sexual offender against
children.   Thereafter, Weber retained new counsel and filed a Crim. P. 33
motion for a new trial based on claims of newly discovered evidence and
ineffective assistance of trial counsel.   He alleged that S.B. told another jail
inmate, C.F., that S.B. lied in his testimony about Weber's confession.
Weber also asserted that trial counsel was ineffective for failing to admit the

4

video of the forensic interview of the victim, in which the victim made statements that purportedly identified the victim's father as the abuser.

At an evidentiary hearing, C.F. testified that S.B. told him that S.B. had "fabricated" certain things about Weber's confession in order to secure a favorable outcome in his own criminal matter. C.F. could not state with specificity what aspects of S.B.'s testimony were fabricated.

Further, a forensic interviewer testified that, during the recorded interview of the victim, the victim denied touching a "boy's pee pee" but said that she had seen her father's "pee pee." The victim denied telling her father that "something happened with someone's pee pee." Later in the interview, though, the victim said that she did touch a "pee pee."

The trial court denied the motion for a new trial, first finding that C.F.'s testimony was "confusing and vague" as to which of S.B.'s statements were "fabricated" and that S.B.'s trial testimony was consistent with other known facts.

The court further held that trial counsel was not ineffective for failing to introduce the video of the forensic interview because the video would not have been admissible since the victim did not testify and because, even if the video had been admitted, the victim's statements were not of the exculpatory nature suggested by Weber. Specifically, the court determined that the victim's statements that she had seen her father's penis and that she had touched a penis were unrelated.

The trial court adjudicated Weber a habitual sexual offender against children, found that he was a sexually violent predator, and imposed a controlling sentence of eighteen years to life in the custody of the Department of Corrections (DOC).

Docket No. 12-3 at 2-5. Ultimately, the CCA rejected all of petitioner's claims, and affirmed the trial court's denial of postconviction relief. *Id.* at 28.

**B. Federal Habeas Proceedings.**

Petitioner commenced this habeas action under § 2254 on October 16, 2020. Docket No. 1. As relief, petitioner asks the Court to "[v]acate [his] conviction and/or dismiss with prejudice and/or any other proper remedy under law." *Id.* at 25. Respondents have answered Claims 1 and 3(b), arguing that § 2254 provides no basis

for habeas relief.   Docket No. 19.   Petitioner has not filed a reply to address respondents' arguments, and the time to do so has passed.   *See* Docket No. 15 at 16. The Court will now address the merits of petitioner's remaining claims.

## III.   DISCUSSION

### A.   Claim 1 and Subclaims 1-15: Ineffective Assistance of Counsel

Claim 1, with its multiple subparts, contends petitioner's trial counsel was constitutionally ineffective.   A defendant in a criminal case has a Sixth Amendment right to the effective assistance of counsel.   *See Strickland v. Washington*, 466 U.S. 668 (1984).   To establish that counsel was ineffective, Petitioner must demonstrate both deficient performance and that counsel's deficient performance resulted in prejudice to his defense.   *See id*. at 687.   If Petitioner fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed.   *See id.* at 697.   In general, "[j]udicial scrutiny of counsel's performance must be highly deferential."   *Id*. at 689.   There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."   *Id*.   It is Petitioner's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.   *See id*.

The challenge of demonstrating counsel was ineffective is even greater for a state prisoner seeking federal habeas corpus review under § 2254(d).   *See Harmon v. Sharp*, 936 F.3d 1044, 1058 (10th Cir. 2019).   "When assessing a state prisoner's ineffective-assistance-of-counsel claims on habeas review, [federal courts] defer to the state court's determination that counsel's performance was not deficient and, further, to the attorney's decision in how to best represent a client."   *Id*. (internal quotation marks

and brackets omitted).   Thus, review under § 2254(d) is doubly deferential.   *See id.*
"The question is whether *any* reasonable argument exists that counsel satisfied
*Strickland's* deferential standard."   *Id.* (citations and internal quotes omitted).   "And
because the *Strickland* standard is a general standard, a state court has . . . more
latitude to reasonably determine that a defendant has *not* satisfied that standard."   *Id.*

Under the prejudice prong, Petitioner must establish "a reasonable probability
that, but for counsel's unprofessional errors, the result of the proceeding would have
been different."   *Strickland*, 466 U.S. at 694.   "A reasonable probability is a probability
sufficient to undermine confidence in the outcome."   *Id.*; *see also Richter*, 562 U.S. at
112 (stating that "[t]he likelihood of a different result must be substantial, not just
conceivable.").   In determining whether Petitioner has established prejudice, the Court
must look at the totality of the evidence and not just the evidence that is helpful to
Petitioner.   *See Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

**Subclaims 1 and 3—Forensic video interview of victim.**   Both of these
claims involve a video recording of an interview with the victim.   According to petitioner,
various statements made by the victim identify someone other than petitioner as the
person who assaulted her.   Docket No. 1 at 5, 7.   Petitioner contends that counsel was
ineffective because this was "not brought out []or attacked in trial" and for failing to
"introduce [the] exculpatory video evidence that demonstrated [petitioner's] innocence
and identifies someone other than [petitioner.]"   *Id.*   Respondents answer that
§ 2254(d)(1) bars the claims because the CCA's decision was not contrary to or an
unreasonable application of *Strickland*.   Docket No. 19 at 16-18.   And relief under
§ 2254(d)(2) is unavailable because the CCA did not reject the claims based on an

unreasonable determination of the facts.   *Id.*   The Court agrees with respondents.

The CCA rejected the claims, finding neither deficient performance nor prejudice. The CCA agreed with the trial court "that the video would not have been admissible and that the video did not contain the exculpatory statements suggested by [petitioner]." Docket No. 12-3 at 9.   In addition, the court noted "that the introduction of evidence is a strategic decision within counsel's authority."   *Id.* at 10.   The court further stated, "the record belies [petitioner's] argument that the video would have been exculpatory if admitted at trial."   *Id.*   As such, it concluded petitioner had "failed to establish a reasonable probability that, had counsel sought to introduce the video, the trial court would have admitted it and its admission would have changed the result of the trial." *Id.* at 10-11.

There is no basis for habeas relief here.   The state court applied *Strickland*, and did so in a reasoned manner.   Petitioner offers no authority for the proposition that, to be effective, defense counsel was required to make the specific arguments he presses, or have the video admitted into evidence.   To the contrary, "[w]hether to raise a particular defense is one aspect of trial strategy, and informed strategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong."   *Anderson v. Attorney Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) (quotes and citations omitted).   Petitioner offers nothing to rebut the presumption that counsel's trial strategy was correct.

Moreover, the state court found the video, and the statements made in it, inadmissible.   In *Parker v. Scott*, 394 F.3d 1302, 1326 (10th Cir. 2005), the Tenth Circuit rejected a similar claim.   There, the state habeas petitioner "argued that his trial

8

counsel was ineffective for failing to introduce a videotape of an interview between the child" and a police officer.   *Id.* at 1326.   While cross-examining the officer, trial counsel "attempted to use a written transcript of the videotape, but the trial court excluded the transcript on foundation grounds."   *Id.*   The ineffective assistance claim was rejected because "nothing in the record indicates that a reasonable attorney would have sought to introduce evidence that the trial court had ruled inadmissible."   *Id.*   The same is true here: petitioner offers nothing to counter the state court's ruling that the video was inadmissible.   Counsel therefore was not ineffective for pursuing a meritless course of action at trial.   *See Lafler v. Cooper*, 566 U.S. 156, 167 (2012) ("Because the objection upon which his ineffective-assistance-of-counsel claim was premised was meritless, [petitioner] could not demonstrate an error entitling him to relief."); *Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004) ("if the issue is meritless, its omission will not constitute deficient performance.").

Petitioner does not show by clear and convincing evidence—or any evidence— that the state court's rejection of this claim was based on an unreasonable determination of the facts in light of the evidence presented.   28 U.S.C. § 2254(d)(2). In reviewing the state-court record, this Court agrees that the victim's statements in the video do not suggest that someone other than petitioner was the perpetrator of the crimes.   Docket No. 22, "Sungate Interview," Nov. 21, 2014.   Consequently, habeas relief is not warranted.

**Subclaim 2—Expert testimony.**   Petitioner's second claim argues counsel erred by failing to call an expert to opine "that the victim's behaviors and actions were inconsistent with [petitioner] committing the alleged offenses[.]"   Docket No. 1 at 5-7.

9

Respondents argue that the CCA reasonably applied *Strickland* in denying the claim. Docket No. 19 at 18-19.   The Court agrees with respondents.

The CCA found petitioner failed to show prejudice under *Strickland*.   Docket No. 12-3 at 15-16.   The court explained that petitioner "did not identify the expert witness, explain the nature of his or her refusal to testify, or address the admissibility of his or her anticipated testimony."   *Id.* at 16.

Petitioner does not identify how the CCA's resolution of this claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.   There was no reasonable probability that expert testimony would have affected the outcome at trial where petitioner did not identify the expert witness, explain why the expert refused to testify, or establish the expert testimony would have been admissible.   Testimony from an expert about the victim's behavior being inconsistent with petitioner committing the assault would have done little, if anything, to undermine the following evidence: video of petitioner being in the tube slide with the victim, petitioner's prior sexual assaults of other children, and testimony from the victim's father implicating petitioner.

Petitioner offers no explanation for why the state court's rejection of this claim was based on an unreasonable determination of the facts in light of the evidence presented.   28 U.S.C. § 2254(d)(2).   Habeas relief is thus not available.

**Subclaim 4—Exculpatory DNA evidence.**   Petitioner next argues that counsel provided ineffective assistance by failing to present exculpatory DNA evidence—specifically, DNA evidence that purportedly matched someone other than petitioner. Docket No. 1 at 8.   Respondents counter that the CCA correctly denied the claim

because it is based on a mistaken premise.   In fact, no DNA evidence collected from the victim was identified as coming from a person other than petitioner.   Docket No. 19 at 20-21.   The Court agrees with respondents.

The CCA found that "the record does not support a conclusion that there was DNA evidence collected from the victim that came from a person other than [petitioner]." Docket No. 12-3 at 14.   "Rather, the prosecution's expert witness testified that DNA samples taken from the victim's mouth and underwear could not be matched to any person and did not reveal the presence of male DNA."   *Id.*   The court also noted that "defense counsel highlighted these findings during his cross-examination of the expert." *Id.*

The Court finds denial of this claim reasonable under *Strickland*.   Petitioner presents nothing to support his argument that a DNA sample taken from the victim matched someone other than him.   And the state-court record supports the court's characterization of the DNA evidence that did exist.   Docket No. 22, Trial Tr. at 52-77, Aug. 6, 2015.   As such, this claim does not meet the requirements for habeas relief under § 2254(d)(1) or (2).

**Subclaims 5, 6, and 7—Testimony by cellmate that petitioner confessed.**
Petitioner's cellmate, S.B., testified that petitioner confessed to committing the crimes in this case.   Petitioner's three ineffective assistance claims assert various ways that counsel could, or should, have undermined S.B.'s unfavorable testimony.   Subclaim 5 contends that counsel lost a note written by another inmate, C.F., allegedly stating that S.B. admitted to lying about petitioner's confession to receive a reduced sentence. Docket No. 1 at 8-9.   Subclaim 6 argues ineffective assistance by not impeaching

11

S.B.'s testimony concerning "discrepancies" between "what [petitioner] allegedly told

him about [and] what the video and pictures actually showed; the two did not match."

*Id.* at 9-10.   Subclaim 7 says counsel faltered by not seeking "a continuance to obtain a

subpoena to support [petitioner's] claims and establish that [S.B.] was perjur[]ing

himself."   *Id.* at 10.

In rejecting these claims, the CCA found them to fail both prongs under

*Strickland*:

> ### F. Claims Related to C.F. and S.B.
> Weber argued that trial counsel failed to preserve a note from C.F. stating
> that S.B. admitted to lying about Weber's confession to receive a reduced
> sentence and that such note could have been used to impeach S.B.'s
> testimony.
>
> Weber also claimed that trial counsel failed to seek a continuance of the
> trial to subpoena C.F. to have him testify regarding S.B.'s admission to lying
> about Weber's confession.
>
> Weber further argued that trial counsel failed to adequately impeach S.B.
> with discrepancies between his testimony and other evidence.
>
> In denying these claims, the postconviction court noted that, in the Crim. P.
> 33 proceeding, the court found C.F.'s testimony to be unpersuasive,
> confusing, and vague, while S.B.'s trial "testimony had indicia of
> truthfulness."   The court concluded that, even if counsel's performance
> was deficient with regard to subpoenaing C.F. or preserving his note, Weber
> failed to demonstrate a reasonable probability that, if C.F. had testified or
> his letter had been admitted, the result of the trial would have been different.
> The postconviction court further found that Weber failed to overcome the
> presumption that counsel's decisions regarding whether to call C.F. and
> how to cross-examine S.B. were sound trial strategy.
>
> We perceive no error in the postconviction court's denial of these claims.
>
> The record supports the court's finding that C.F.'s information was
> "confusing and vague."   Further, assuming a note from C.F. existed, Weber
> did not demonstrate that it would have been admissible at trial for the
> purpose of impeaching S.B.'s testimony.   *Cf. Chambers*, 900 P.2d at 1252;
> *see also Villanueva*, ¶ 68.

Finally, the record belies Weber's argument that counsel did not adequately cross-examine S.B. on inconsistencies in his testimony.

Docket No. 12-3 at 17-18.

Respondents argue that the CCA was neither unreasonable in applying *Strickland* to deny these claims, nor was its decision based on an unreasonable determination of the facts.   Docket No. 19 at 21-24.   The Court agrees.

Petitioner fails to show how the CCA's denial of these claims ran afoul of clearly establish federal law.   And petitioner does not establish that, but for these claimed errors, the result at trial would have been different.   Likewise, Petitioner does not suggest that the state court's rejection of these claims was based on an unreasonable determination of the facts in light of the evidence presented.   To the contrary, the state-court record supports the factual findings.   Docket No. 22, Trial Tr. at 178-85, Aug. 5, 2015; Hr'g Tr. at 90-95, Mar. 4, 2016.   Habeas relief is therefore barred by 28 U.S.C § 2254(d).

**Subclaim 8—Cross-examination of witnesses.**   This claim argues that trial counsel was ineffective for failing to impeach several witnesses "where statements changed, had several discrepancies, or other relevant information that would create reasonable doubt."   Docket No. 1 at 10-13.   The Court will recount the CCA's discussion of the claim, and then apply § 2254.

In rejecting this ineffective assistance claim, the CCA found that petitioner failed to establish deficient performance or prejudice:

Weber argued that trial counsel inadequately questioned and impeached various aspects of the testimonies of his half-sister, the victim's father, the detective, a DNA expert, and his mother.

13

The postconviction court determined that, for each of these claims, Weber had not demonstrated that counsel's performance was not sound trial strategy.   We agree.

Strategic or tactical decisions include, among other things, how to conduct cross-examination.   *Arko*, 183 P.3d at 558.   "To establish ineffective assistance, [a] defendant [is] required to overcome the presumption that, under the circumstances, the challenged conduct of his [or her] counsel might be considered sound trial strategy."   *Ardolino*, 69 P.3d at 78.

Moreover, Weber failed to establish a reasonable probability that, but for counsel's allegedly deficient examinations, the result of the trial would have been different.   *See Villanueva*, ¶ 68; *see also Carmichael v. People*, 206 P.3d 800, 807 (Colo. 2009) (a defendant's self-serving claim of prejudice is insufficient without some objective, corroborating evidence).

In a related contention, Weber also argued that trial counsel failed to challenge some testimony that "reword[ed] . . . the accusation from 'he put his . . .' to 'that man put . . .'" and that this omission was prejudicial because the victim identified her father as the "he" referenced in the original accusation.

In denying this claim, the postconviction court was uncertain what "reword[ed]" testimony Weber was challenging.   Nevertheless, the court found that Weber did not overcome the presumption that counsel's examination was sound trial strategy and noted that, in denying his Crim. P. 33 motion, it had already rejected Weber's interpretation of the victim's forensic interview statements.

It appears that Weber may have been referring to the victim's father's testimony that the victim said "that man put his pee pee in her mouth." Even so, we conclude that the postconviction court did not err in its finding.

As noted above, the alleged accusation from the video would not have been admissible, and the record does not support Weber's interpretation of the victim's statements as identifying her father as the abuser.   *See Steward*, 179 Colo. at 34, 498 P.2d at 934; *cf. Chambers*, 900 P.2d at 1252.

Docket No. 12-3 at 11-13.

Petitioner's habeas application offers the following critiques of counsel's handling

of each witness:

- Petrillo (the victim's father).   "[C]ounsel should have pointed-out that testimony changed throughout the proceedings[,]" and that his "background should have been more thoroughly investigated and questioned as [to] why he is required to register as a sex offender[.]"   Docket No. 1 at 11.

- Kisselman (the investigating officer).   "[C]ounsel should have been more aggressive in how police use deception, . . . [h]e should have thoroughly questioned the discrepancies and changes in his testimony."   Specifically, counsel could have contradicted Kisselman's testimony "about how tall the play equipment was[.]"   *Id.*

- DNA expert.   Counsel should have questioned the DNA expert about how "the DNA evidence was **negative** and how important the fact of it being collected within two hours is."   *Id.*   Petitioner also references an outer mouth swab with no elaboration.   *Id.*

- Tefft (petitioner's mother).   Counsel should have elicited testimony that he is a "good father."   *Id.* at 12.   Petitioner also claims that Tefft could have contradicted Kisselman's testimony regarding the height of the play equipment.   *Id.*

- Lefevre (petitioner's half-sister).   Counsel should have elicited more details about how Lefevre's attitude towards petitioner changed after a probate dispute.   *Id.*   Counsel should have "impeached" Lefevre's testimony that made the space under a stairwell "sound like a 'dungeon' when pictures show it was only storage."   *Id.*

15

Petitioner establishes no basis for habeas relief on this claim.   To start, each of petitioner's arguments take issue with counsel's underlying performance.   But that is not the ultimate question before this Court. "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.   This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Richter*, 562 U.S. at 101.   Petitioner presents no allegation or argument that suggests the state court's application of *Strickland* was unreasonable.

Moreover, as respondents argue, the application provides no specifics as to why counsel's performance was deficient or not sound trial strategy.   Docket No. 19 at 24-31.   Instead, petitioner points to various ways that counsel "could have done more" to discredit these witnesses, with many of the claimed deficiencies being immaterial—*e.g.*, the height of the play tubes or the description of the space under the stairwell where petitioner was alleged to have sexually abused his half-sister.   "As is always the case, trial counsel could have done more.   But the question under *Strickland* is not whether counsel could have done more, but whether counsel's decision not to do more was '[objectively unreasonable] in all the circumstances, applying a heavy measure of deference to counsel's judgments.'"   *Turrentine v. Mullin*, 390 F.3d 1181, 1209 (10th Cir. 2004) (quoting *Strickland*); *Mora v. Williams*, 111 F. App'x 537, 550 (10th Cir. 2004) (unpublished) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different.") (citation and internal quotation omitted). Petitioner presents no allegations or argument to meet the standard under *Strickland*, or the more demanding standard required by § 2254.   Habeas relief will accordingly be denied.

16

**Subclaims 9 through 12—Habitual offender adjudication.**   If the prosecution proved that petitioner had a prior conviction for sexual assault on a child, Colorado's recidivist-sentencing statue required the trial court to enhance the minimum term of his indeterminate sentence by triple the maximum presumptive range.   Petitioner's next three claims challenge counsel's handling of the sentencing enhancement that led to him being adjudicated a habitual sex offender against children.   Docket No. 1 at 13-17. Specifically, his trial counsel stipulated to the prior conviction, which petitioner argues an attorney is not permitted to do without the client's affirmative waiver to have the habitual count proven to a jury; counsel failed "to research or investigate the constitutionality or valid[ity] of [the] previous conviction[] for collateral attack or suppression"; counsel failed to demand "a jury trial on the habitual proceedings"; and counsel failed to challenge the constitutionality of the Colorado statutes under which he was tried, convicted, and sentenced.   *Id.*   The Court will first recount the CCA's decision, and then examine whether the requirements of § 2254 have been met.

The CCA found no merit to these claims:

A. Waiver of the Right to a Trial
Weber contended that trial counsel impermissibly waived his right to have the prosecution prove the habitual count at a trial.

In denying the claim, the postconviction court found that, even assuming counsel improperly admitted the habitual count, Weber failed to establish a reasonable probability that he would not have been adjudicated a habitual sexual offender against children if a trial had been held.   We agree.

Even though counsel stipulated to the habitual count, the prosecution filed with the court a "Sentencing Memo and Submission of Exhibits in Support of Habitual Offender Count."   Attached to the filing were the following documents that the prosecution would have offered at a habitual trial to prove that Weber had previously been convicted of sexual assault on a child:

17

- the felony complaint, the plea documents, and the mittimus from a 2003 criminal case that reflected the defendant therein was convicted in 2004 of sexual assault on a child, and a "triple-certificate of authenticity" from the trial court clerk;
- a photograph and the fingerprints of the defendant serving the prison sentence reflected on the 2003 case's mittimus, and a "triple-certificate of authenticity" from the DOC's custodian of records;
- a photograph and the fingerprints of Weber collected in connection with the present matter; and
- a report from a criminalist in the Arapahoe County Sheriff's Office concluding that Weber's fingerprints matched the fingerprints of the defendant serving the prison sentence in the 2003 case.

This record demonstrates that no reasonable probability existed that, but for counsel's waiver of the right to a trial, Weber would not have been adjudicated a habitual sexual offender against children.

### B. Failure to Challenge Prior Conviction

Weber asserted that trial counsel failed to investigate whether his 2004 conviction could have been challenged so that it could not be used to support the habitual sexual offender against children count.

However, Weber did not identify the basis upon which his prior conviction could have been challenged.   He stated that "he only pled guilty to the prior offense because counsel told him he would suffer 80-years in prison if he took the matter to trial," but he did not explain why this advisement affected the validity of the prior conviction.

Accordingly, we conclude that Weber failed to demonstrate a reasonable probability that, had counsel investigated the validity of his prior conviction, the result of the habitual sexual offender against children proceeding would have been different.   *See People v. Zuniga*, 80 P.3d 965, 973 (Colo. App. 2003) (rejecting the defendant's claim that counsel was ineffective for conducting an inadequate investigation because he did "not explain[] what additional investigation counsel should have done, what the results of those efforts would have been, and how they would have affected the outcome of the case"); *see also* § 16-5-402(1), (2), C.R.S. 2019 (in the absence of an enumerated exception, a collateral attack on a conviction must be filed within three years of conviction of an offense other than a class 1 felony).

### C. Jury Trial

Weber argued that trial counsel failed to request a jury trial on the habitual sexual offender against children count.   The postconviction court rejected

18

the claim as successive because it was addressed on direct appeal.   We
agree.   *See* Crim. P. 35(c)(3)(VI); *see also Rodriguez*, 914 P.2d at 249.

Docket No. 12-3 at 20-23.

As to petitioner's claimed right to a jury trial regarding the habitual offender count,
on direct appeal, the CCA held "that neither the federal nor the state constitution
requires a jury trial for a habitual criminal proceeding for the reasons stated in those
cases."   Docket No. 12-2 at 20-21 (citing cases).

The Court agrees with the CCA that, even if his counsel erred by stipulating to a
prior conviction, petitioner cannot show prejudice because of the overwhelming
evidence the prosecutor submitted to establish the prior conviction.   As to counsel's
failure to attack the validity of the prior conviction, petitioner argues that he pled guilty
only because he faced 80-years to life in prison if he took the case to trial and lost.   But
petitioner's personal motivations for pleading guilty do not make it any less a prior
conviction for sexual assault of a child.   Moreover, petitioner offers no reason the prior
conviction could have been invalidated.   Finally, there is no federal right to have a jury
determine the fact of a prior conviction: "*Other than the fact of a prior conviction*, any
fact that increases the penalty for a crime beyond the prescribed statutory maximum
must be submitted to a jury, and proved beyond a reasonable doubt."   *Apprendi v. New
Jersey*, 530 U.S. 466, 490 (2000) (emphasis added); *Alleyne v. United States*, 570 U.S.
99, 112 (2013) ("the principle applied in *Apprendi* applies with equal force to facts
increasing the mandatory minimum.").   Consequently, these claims will be denied.

**Subclaim 13—Confrontation Clause violation.**   Petitioner claims that
"[c]ounsel should have objected to not being able to . . . confront [his] accuser and

question them [sic]."   Docket No. 1 at 17-18.   The CCA denied the claim "because, as

found at trial, the victim's statements to her father did not implicate the Confrontation

Clause, in accordance with *Ohio v. Clark*, 576 U.S. 237 (2015)."   Docket No. 12-3 at

18-19.   Petitioner offers nothing to show the CCA's decision was contrary to, or an

unreasonable application of, federal law.   As the state court found, it is well-established

that statements given to persons other than those in law enforcement are not

testimonial in nature when there is no indication that the primary purpose of the

conversation is to gather evidence for a criminal prosecution.   *See Giles v. California*,

554 U.S. 353, 376 (2008) (observing that because only testimonial statements are

excluded by the Confrontation Clause, a victim's statements to "friends and neighbors

about abuse and intimidation" would not be excluded); *Michigan v. Bryant*, 562 U.S.

344, 356 (2011) (finding statements to police non-testimonial and thus not barred by the

Confrontation Clause when they are given under emergent circumstances for purposes

other than proving past events for later prosecution); *Ohio v. Clark*, 135 S.Ct. 2173,

2181-82 (2015) (concluding that three-year-old victim's statements to his preschool

teachers identifying defendant as the person who had caused his injuries were not

testimonial).   Accordingly, petitioner points to no basis for habeas relief.   This claim will

be denied.

     **Subclaim 14—404(b) evidence.**   Petitioner supports this claim with the

following allegations: "Counsel never argued, objected to, nor responded to allowed

404(b) evidence.   This evidence did not demonstrate or show 'common plan" as cited

by prosecution."   Docket No. 1 at 18.

     But on direct appeal, the CCA "discern[ed] no abuse of discretion and affirm[ed]

the [trial] court's admission of the prior act evidence under Rule 404(b)."   Docket No. 12-2 at 17, 4-17.   The Court agrees with respondents that, because the CCA found the other acts evidence admissible under state law, petitioner cannot succeed on this ineffective assistance claim on federal habeas review.   Docket No. 19 at 37-38.   State court decisions that rest on matters of state law are binding on a federal habeas court. *Chapman v. LeMaster*, 302 F.3d 1189, 1196 (10th Cir. 2002).   This Court is bound to accept the CCA's conclusion that the 404(b) evidence was admissible under state law. Therefore, petitioner cannot establish a basis for judging counsel's performance deficient as counsel cannot perform deficiently by failing to raise a meritless issue.   *See Lafler*, 566 U.S. at 167 ("Because the objection upon which his ineffective-assistance-of-counsel claim was premised was meritless, [petitioner] could not demonstrate an error entitling him to relief."); *Miller*, 354 F.3d at 1298 ("if the issue is meritless, its omission will not constitute deficient performance.").   Given these circumstances, the CCA's rejection of this claim was not contrary to, or an unreasonable application of, federal law.   Nor does petitioner claim the decision was based on an unreasonable determination of the facts in light of the evidence presented.   As such, habeas relief is not available.

> **Subclaim 15—Wording of jury instructions.**   Petitioner's final ineffective assistance claim states that "counsel was also ineffective by not objecting to the wording of jury instructions using the term 'crime' versus 'element.'"   Docket No. 1 at 18.   The CCA denied the claims as follows: "[T]he postconviction court noted that the word 'crime' was used in six instructions and Weber failed to specify the instruction to which counsel should have objected.   The [postconviction] court nevertheless

concluded that '[i]n none of these instructions would it make sense, semantically or legally, to substitute the word 'element' for the word 'crime.'"   Docket No. 12-3 at 19. Accordingly, the CCA found "that the postconviction court did not err by denying this conclusory claim."   *Id.*

Petitioner does not explain how the CCA's rejection of this claim was an unreasonable application of *Strickland*, or how it was based on an unreasonable determination of the facts.   The Court has reviewed the jury instructions and, like the CCA, cannot discern a reasoned basis for substituting the word "element" for "crime." As a result, the claim presents no basis for habeas relief.

**B.     Claim 3(b): Verdict of Jury Statute**

Claim 3(b) attacks the constitutionality of Colorado's "verdict of jury" statute, Colo. Rev. Stat. § 18-1.3-803, on the ground that it allows a judge, not a jury, to "make a determination that increases or enhances the penalties related to criminal convictions." Docket No. 1 at 21-22.   But, as discussed above, there is no federal right to have a jury determine the fact of a prior conviction: "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."   *Apprendi*, 530 U.S. at 490 (emphasis added); *Alleyne*, 570 U.S. at 112; *see also Butt v. Hartley*, 378 F. App'x 822, 826 (10th Cir. 2010) (unpublished) (stating that *Apprendi* "clearly exempt[s] judicial fact-finding regarding prior convictions from the rule that only a jury may constitutionally find facts which increase a defendant's maximum sentence.").   Habeas relief is therefore not available on this claim.

22

## IV.    CONCLUSION

For these reasons, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28

U.S.C. § 2254 [Docket No. 1] is **DENIED** and this case is **DISMISSED WITH**

**PREJUDICE**.   It is further

**ORDERED** that there is no basis on which to issue a certificate of appealability

pursuant to 28 U.S.C. § 2253(c) because petitioner has not made a substantial showing

of the denial of a constitutional right.


DATED October 18, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge